**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| **ROY CHAMBERLAIN,** § | |
| **Plaintiff,** § | |
| v.  § | No. 7:09-CV-0189-O-BH |
| § | |
| **MICHAEL ASTRUE, Commissioner of** § | |
| **the Social Security Administration,** § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for proposed findings of fact and recommendation for disposition. Before the Court are *Brief for Plaintiff* ("Pl. Br."), filed March 10, 2010, and *Defendant's Brief*, filed April 9, 2010. Based on the relevant filings, evidence, and applicable law, the final decision of the Commissioner should be **AFFIRMED**.

**I. BACKGROUND**[1]

**A. Procedural History**

Roy Chamberlain ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). On September 22, 2006, Plaintiff applied for benefits, claiming he has been disabled since January 1, 2003, due to chronic pulmonary disease ("COPD") and orthopedic problems.[2] (Tr. at 55-56, 61.) The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. at 10, 36, 41.) A hearing before an

---

[1] The background information comes from the transcript of the administrative proceedings, which is designated as "Tr."

[2] This is Plaintiff's third application for benefits – the first resulted in an unfavorable decision on February 24, 2004, by the same ALJ as this case, which was ultimately affirmed in federal district court and the second resulted in an August 2006 "agreed period of disability, from January 1, 2002, to December 31, 2002." (Tr. at 10.) Although these other applications are not directly relevant to this case, the ALJ occasionally refers to and incorporates by reference various records from the first application. (*See* Tr. at 14, 17.) Despite the references, the administrative record of this case does include all records from the first case. *See generally Chamberlain v. Comm'r Soc. Sec.*, No. 7:04-CV-0190-AH, unpub. mem. and order (N.D. Tex. Oct. 11, 2005) (noting medical records that are not included in the current administrative record).

Administrative Law Judge ("ALJ") was held on November 7, 2007.  (Tr. at 253-79.)  In a written decision dated September 4, 2009, the ALJ found Plaintiff not disabled.  (*See* Tr. at 10-20.)  The Appeals Council found no reason to review the ALJ's decision and denied Plaintiff's request for review.  (Tr. at 4-6.)  Consequently, the ALJ's decision is the final decision of the Commissioner.  (*Id.* at 4.)  Plaintiff appealed the Commissioner's decision to this Court pursuant to 42 U.S.C. § 405(g) on December 7, 2009.

**B.  Factual History**

    **1.  Age, Education, and Work Experience**

Plaintiff was born in 1952, and has a tenth grade education.  (*See* Tr. at 56, 66, 257.)  He has past relevant work experience as an auto mechanic and garage supervisor.  (Tr. at 62, 273.)

    **2.  Medical Evidence**

Prior to September 2000, Plaintiff had surgery for a fractured left leg and heel.  (*See* Tr. at 164.)  A September 2000 bone scan revealed a "moderate uptake" in the left tibia which did not correspond to the prior surgery.  (Tr. at 162.)  X-rays of the tibia showed a vague sclerosis which correlated to the "abnormal bone scan" and might have resulted from "a stress fracture or stress reaction."  (Tr. at 163.)  X-rays of the left ankle showed the prior fractures, and the radiologist noted "Marked post surgical changes."  (Tr. at 164.)

In February 2003, Plaintiff's coughing and complaints about ankle pain resulted in a probable diagnosis of bronchitis and COPD by Paul Parkey, M.D.  (Tr. at 113-14.)  Plaintiff received a shot and a prescription for medication.  (Tr. at 115.)  When Plaintiff returned to Dr. Parkey with complaints of right leg or ankle pain in July 2003, the diagnosis changed to COPD and ankle pain.  (Tr. at 109-10).  Various medications were refilled.  (Tr. at 109.)  At a checkup with Dr. Parkey in

October 2003, Plaintiff reported heel pain and a prior "crushed heel" in 1989. (Tr. at 105.) The doctor diagnosed COPD, asthma, and foot pain. (Tr. at 106.)

Treatment records from Dr. Parkey dated May through November 2004, reflect continued complaints about COPD and pain in the leg or ankle. (*See* Tr. at 85-86, 89, 93-94, 97-98, 101-02.) In May and November 2004, Plaintiff also complained about low-back pain. (Tr. at 89, 101.) In September 2004, he had abdominal pain. (Tr. at 93.) He was so dizzy in November 2004 that he could "hardly walk", and Dr. Parkey diagnosed vertigo. (Tr. at 89-90.)

In March 2005, Plaintiff complained about neck pain to Dr. Parkey. (Tr. at 192.) On June 10, 2005, he reported that he had fallen several months prior and injured his left rib area. (Tr. at 196.) The next two months, he complained of pain in his left arm, shoulder, and hand. (*See* Tr. at 200, 204.) In September 2005, he reported chronic problems with his upper extremities and his feet, including numbness. (Tr. at 208.) Plaintiff continued to complain about back and ankle pain during his 2005 visits to Dr. Parkey. (*See* Tr. at 192, 196, 204, 212.)

On referral from Dr. Parkey, Dr. Jaime C. Lim examined Plaintiff in November 2005 for severe neck pain. (Tr. at 249-52.) Plaintiff denied weakness but complained of neck, low-back, knee, and ankle pain. (Tr. at 249-50.) Motor examination revealed normal strength in all extremities with no evidence of atrophy. (Tr. at 250.) Plaintiff ambulated normally, could "tandem walk", and heel and toe walk normally. (*Id.*)

Plaintiff returned to Dr. Parkey in January 2006 with complaints of pain in his neck, lower back, and bilateral lower extremities. (Tr. at 216.) In March 2006, he complained of pain in his bilateral lower extremities. (Tr. at 220) In August 2006, he complained of ankle and joint pain. (Tr. at 226.)

In November 2006, Dr. Sanjoy Sundaresan examined Plaintiff for neck pain; he did not note a problem with walking. (Tr. at 120.) The next month, Dr. Sundaresan noted that Plaintiff had normal strength in all extremities and "ambulates well with normal gait." (Tr. at 148.) In early January 2007, Plaintiff had neck surgery. (Tr. at 126-27, 130.) The day after surgery and twice in the following thirty days, medical records noted that he was "ambulating without assistance" but in April 2007, he was using a cane. (*See* Tr. at 127, 130, 132, 135, 141.) In July 2007, he was again "ambulating without assistance". (Tr. at 138.)

In October 2007, Dr. Parkey noted a "plethora of medical maladies that preclude [Plaintiff] from working or even seeking work", and opined that Plaintiff "is now, and will be into the foreseeable future, unable to work at any occupation and should be considered for Social Security Disability Benefits as soon as possible." (Tr. at 160.) The doctor noted the January surgery and indicated that Plaintiff "has quite a bit of difficulty ambulating." (*Id.*)

The next month, Dr. Parkey completed a Residual Functional Capacity Questionnaire for Plaintiff. (*See* Tr. at 157-59.) Based on his observations and knowledge of Plaintiff for the period January 1, 2003, through March 30, 2004, Dr. Parkey opined that Plaintiff's condition precluded him from standing or walking unsupported, sitting, and stooping. (Tr. at 157-58.) During that period, Plaintiff could lift and carry no more than ten pounds occasionally or frequently. (Tr. at 158.) He noted that Plaintiff had used a cane constantly since 2000 and had difficulty grasping and holding objects, manipulating small objects, and using a keyboard with his left hand. (*Id.*) Plaintiff had to elevate his legs horizontally or higher more than four hours during an eight-hour workday and he had difficulties turning his neck to the left and right. (Tr. at 159.)

4

**3. Hearing Testimony**

At the November 2007 hearing before the ALJ, Plaintiff appeared in person and through his attorney. (Tr. at 253.) Plaintiff, his wife, and a vocational expert testified at the hearing. (Tr. at 256-79.)

*a. Plaintiff's Testimony*

Plaintiff testified that he could not work as a mechanic because of injuries to his knees, ankles, and hip. (Tr. at 258.) His work had included supervising others. (Tr. at 260.) His typical day involved picking up a few dishes and trying to keep the two-bedroom house clean, and he did laundry and prepared easy meals. (Tr. at 258-59.) He drove occasionally but no farther than a sixty-mile round trip in the prior two years. (Tr. at 260-61.)

Plaintiff testified that his condition was "a lot worse" compared to 2003 and 2004. (Tr. at 262.) In 2003 and 2004, he could not work as a mechanic like he did years before, he was often on crutches or wearing a brace, and he was "[p]retty much" having the same difficulties walking as he had at the time of the hearing. (*Id.*) At that time, he could not stand or walk for more than fifteen minutes; the best thing for his feet was to lie down. (Tr. at 263.) He was also having trouble with his neck and left hand in 2003 and 2004. (Tr. at 264.) He thought his neck problem was just "creaks" which would "work itself out" and go away. (Tr. at 264-65.) In approximately 2005, his neck reached a point where it would not work itself out, and Plaintiff had surgery in January 2007. (*See id.*) At the time of the hearing, Plaintiff had trouble sitting without support – he could not sit through a thirty-minute television show. (Tr. at 265-66.)

*b. Wife's Testimony*

Plaintiff's wife testified that Plaintiff was not working in 2003 or 2004. (Tr. at 269-70.) He

5

would try to make supper and might do a load or two of laundry but would not fold or hang clothes up or do a lot of walking. (Tr. at 270.) He could not walk or stand for very long, and he used a cane all the time. (Tr. at 270-71.) He last significantly worked in 2001. (Tr. at 272.)

### *c. Vocational Expert Testimony*

Clifton King, Jr., a vocational expert ("VE"), also testified at the hearing. (Tr. at 272-79.) He characterized Plaintiff's prior work as a mechanic as skilled, medium work, and the supervisor aspect of that work was light work. (Tr. at 273.) The ALJ asked the VE to consider a hypothetical person of the same age, education, and work experience of Plaintiff with the following limitations: (1) occasionally lift/carry and push/pull twenty pounds, ten pounds frequently; (2) occasionally stoop, crouch, or kneel; (3) infrequently climb ramps or stairs, i.e., ten percent or less of the work time; and (4) no crawling, working at unprotected heights or around hazards, or climbing ladders, ropes, or scaffolds. (Tr. at 273-74.) According to the VE, that hypothetical person could not perform any of Plaintiff's past relevant work but could perform light work as an assembler of household appliances, air compressor mechanic, and assembler of electrical accessories. (Tr. at 274.) In Texas the number of these positions ranged from 2,200 to 2,800; the range was 25,000 to 60,000 in the national economy. (*Id.*)

Upon questioning by Plaintiff's attorney, the VE testified that only the first assembler position would have a sit/stand option. (Tr. at 275.) The mechanic position would not be available to someone who had to use a cane to walk or stand, and that limitation would be detrimental to the other positions because it would require an accommodation. (Tr. at 276.) A ten-pound lifting limit would eliminate all the listed jobs. (*Id.*)

When the ALJ asked about sedentary work, the VE identified two positions for which

6

Plaintiff's past work would provide transferable skills – lock assembler and driller. (Tr. at 277.) Texas had 1,000 to 1,500 of these positions and the range increased to 20,000 to 25,000 nationally. (*Id.*) These positions would be difficult to perform standing, and a person who needed a break after sitting thirty minutes would have a difficult time keeping the job. (Tr. at 277-78.) Without "a lot of accommodation", these jobs would not permit a worker to elevate their feet. (Tr. at 278.) Both the light and sedentary identified jobs require the normal degree of dexterity in both hands. (*Id.*)

## C. <u>ALJ's Findings</u>

The ALJ denied Plaintiff's application for benefits by written opinion issued on September 4, 2009. (Tr. at 10-20.) She found that Plaintiff had not engaged in substantial gainful activity between January 1, 2003, the alleged date of onset of disability, and the date he last met the insured status requirement, March 31, 2004. (Tr. at 13-14.) She next found that through March 2004 Plaintiff suffered from severe impairments, including a history of an ankle fusion in 1990, history of asthma, and hypertension. (Tr. at 14.) Despite his severe impairments, she found no impairment or combination of impairments that satisfied the criteria of any impairment listed in the social security regulations. (Tr. at 14-15.)

In determining Plaintiff's residual functional capacity ("RFC"), the ALJ concluded that the medical record supported only the limitations presented to the VE in the initial hypothetical. (*See* Tr. at 15.) Although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms during the relevant period of time", the ALJ found Plaintiff only partially credible with respect to the "intensity, persistence and limiting effects" of his symptoms. (Tr. at 16.) After considering all symptoms to the extent reasonably consistent with the objective medical evidence, the ALJ concluded that Plaintiff retained the RFC to perform a limited

range of light work with some nonexertional limitations as set out in his initial hypothetical to the VE. (Tr. at 16-18.)

The ALJ considered Plaintiff's RFC and testimony from the VE to conclude that he retained the ability to perform work as a assembler of household appliances or electrical accessories, air compressor mechanic, driller, or lock assembler. (Tr. at 19-20.) These positions exist in significant numbers in the economy. (Tr. at 20.)

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program

is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*. at 436 & n.1.

**2. Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64. The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When a claimant's insured status has expired, the claimant "must not only prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status." *Anthony*, 954 F.2d at 295. An "impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability." *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of voca-

9

>   tional factors.
>
> 4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at Step Five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). After the Commissioner fulfills this burden, the burden shifts back to the claimant to show that he cannot perform the alternate work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## B. Issue for Review

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination because the ALJ implicitly found that he could walk and/or stand for three-fourths of an eight-hour work day as required for light work. (Pl. Br. at 1, 8.)

"The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985); *accord* 20 C.F.R. § 404.1546(c). When assessing a claimant's physical abilities, the ALJ first assesses the nature and extent of the claimant's physical limitations and then determines the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)). The relevant policy interpretation[3] states in pertinent part:

> 1. Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule.
>
> 2. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. . . .

*Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). The RFC is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1379, 1386-87 (5th Cir. 1988).

In this case, the ALJ determined that based on the credible evidence in the record, Plaintiff retained the RFC to "perform a limited range of light work with some additional nonexertional

---

[3] Although social security rulings are not binding on this Court, they "may be consulted when the statutes provide little guidance." *Carnahan v. Apfel*, 247 F.3d 241, 2001 WL 43543, at *4 n.1 (5th Cir. Jan. 8, 2001).

limitations."[4] (Tr. at 17.) The ALJ found that Plaintiff "must avoid work hazards and unprotected heights" and "could not crawl or climb ladders, ropes, or scaffolds" but could infrequently climb ramps or stairs. (Tr. at 15, ¶ 5.) In addition, Plaintiff could only occasionally stoop; crouch; kneel; lift, carry, push, or pull twenty pounds; he could frequently lift, carry, push, or pull ten pounds. (*Id.*) The ALJ found other limitations "not supported by the medical evidence as a whole." (*Id.*)

In forming that RFC determination, the ALJ considered both the medical evidence and testimony presented at the hearing. (Tr. at 15-18.) Although Plaintiff and his wife testified that Plaintiff was limited in his ability to stand and walk and needed a cane during the relevant period, the ALJ found them not entirely credible. (Tr. at 16-18.) He found that daily use of a cane was not confirmed by the medical record, and that examinations by Dr. Lim and Dr. Sundaresan showed no evidence of any difficulty walking or standing and their treatment notes supported an opposite conclusion. (Tr. at 16-17.) While one medical record showed use of a cane, the examinations showed no extremity weakness. (Tr. at 17.) The ALJ recognized that Plaintiff's fused ankle would cause some limitation and that medical records from 2000 showed "post-surgical changes" in the left ankle but found that Plaintiff continued to work despite the impairment and that it had "not appeared to

---

[4] Through a policy statement and social security ruling, the Social Security Administration has indicated that the ability to perform "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *See Titles II and XVI: Determining Capability to Do Other Work – The Medical-vocational Rules of Appendix 2*, SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983). The applicable regulation defines "light work" as follows:
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 1567(a). While sedentary work "involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

worsen, causing cessation of work".[5] (*Id.*) The ALJ also briefly considered statements, opinions, findings, and treatment notes of Dr. Parkey:

> Statements of Dr. Parkey [(Tr. at 157-60)] were solicited by the claimant according to treatment notes. Examination findings by Dr. Parkey were minimal and showed primarily complaints of the claimant and prescriptions for medications. Some diagnoses and findings were contrary to those of medical sources, which showed no weakness or allegations of shortness of breath. Dr. Parkey's opinions are not supported by his contemporaneous treatment notes and objective findings. They are contrary to findings from other doctors, showing normal gait.

(*Id.*)

The record reflects that the ALJ considered all evidence supported by the medical records before determining Plaintiff's RFC. (*See* Tr. at 15-18.) Although the medical record for the relevant period shows that Plaintiff complained about ankle or foot pain in February, July, and October 2003, those records do not indicate that Plaintiff was unable to perform the standing and walking requirements of light work. (*See* Tr. at 105-06, 109-10, 113-15.) Likewise, records of Dr. Parkey after the date Plaintiff was last insured do not indicate an inability to perform those requirements. (*See* Tr. at 85-86, 89, 93-94, 97-98, 101-02, 192, 196, 200, 204, 208, 212.) Moreover, even though Plaintiff was experiencing neck and back pain sufficient to require surgery, Dr. Lim and Dr. Sundaresan noted that Plaintiff had a normal gait and ambulated well prior to surgery in January 2007. (*See* Tr. at 148, 250.) Even after the surgery, Plaintiff ambulated without assistance except when he used a cane in April 2007. (*See* Tr. at 127, 130, 132, 135, 138, 141.) This evidence of record constitutes more than a scintilla of evidence to support the ALJ's RFC determination. Therefore, substantial

---

[5] Similarly, in the context of Step 3, the ALJ discussed Plaintiff's history of an ankle fusion and stress fracture in 2000, and pointed out an absence of "findings of a loss of gait and station" and "lack of gross and fine manipulation." (*See* Tr. at 15.) The ALJ found "no evidence of joint dysfunction or malformation" and no "consistent evidence of reflex loss, motor loss, sensory loss, muscle atrophy, [or] positive straight-leg raising." (*Id.*) He noted that Plaintiff's earning statements (Tr. at 47, 52) showed substantial gainful activity in 2000 and 2001, and that medical records from July 2002 showed Plaintiff still working in 2002. (Tr. at 16.)

evidence supports the finding that despite his impairments, Plaintiff was capable of standing or walking for three-fourths of an eight-hour work day prior to March 31, 2004, the date he was last insured. The ALJ compensated for Plaintiff's ankle impairment by finding him limited to light work with additional limitations.

Plaintiff contends that his ongoing complaints of lower extremity pain as reflected in Dr. Parkey's notes bolster his credibility in light of SSR 96-7p. (Pl. Br. at 9.) In pertinent part, the social security ruling states:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.

*Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186, at *7 (S.S.A. July 2, 1996). The ALJ found nothing in the longitudinal medical record of Dr. Parkey to support a standing or walking restriction, with daily use of a cane, however. (*See* Tr. at 15-18.) She stated her reasons for finding Plaintiff not entirely credible. (*See* Tr. at 16-17.) Her credibility determination is entitled to "great deference" and will not be disturbed when supported by substantial evidence. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). The substantial evidence which supports the ALJ's RFC determination also supports her credibility determination. In addition, the ALJ pointed out that Plaintiff had previously indicated that he stopped working in 1999 although evidence of record showed that he worked in 2000 and 2001, and perhaps even in July 2002. (Tr. at 16.)

Plaintiff next contends that the ALJ misconstrued the results of the September 2000 x-rays

14

and failed to note the abnormal bone scan. (*See* Pl. Br. at 9-10.) This does not detract from the substantial evidence which supports the ALJ's RFC determination. First, medical records pertaining to a time period before the alleged onset of disability and prior to a return to substantial gainful activity are immaterial to a claim of disability for a later time period. *Owens v. Heckler*, 770 F.2d 1276, 1280 & n.2 (5th Cir. 1985). Plaintiff's work in 2000 and 2001 shows that he was not disabled by any impairment that may have been revealed by the September 2000 medical records.[6] *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (working with alleged disabling impairments provides substantial evidence that the impairments were not disabling).

Plaintiff lastly contends that the ALJ erred when he considered medical records from Dr. Lim and Dr. Sundaresan that post-dated his insured period without giving adequate consideration to Dr. Parkey's progress notes dated after March 31, 2004.[7] (*See* Pl. Br. at 10-12.) Although the ALJ did not address Dr. Parkey's opinions and records in detail, it appears she considered them. (*See* Tr. at 17.) The brief paragraph addressing Dr. Parkey's records does not limit the discussion to the treatment notes generated within the insured period of alleged disability. (*See id.*) Moreover, other than the rejected opinions which Plaintiff concedes were properly accorded little weight, the records do not detract from the ALJ's RFC determination for the earlier period of alleged disability.[8]

---

[6] In Plaintiff's prior disability action, the Court noted: "On April 11, 2001, Plaintiff reported . . . that his stress fracture was resolved and that he really was not having very much trouble getting around on it. He reported that his left ankle was not bothering him. (Tr. 158)." *Chamberlain v. Comm'r Soc. Sec.*, No. 7:04-CV-0190-AH, unpub. mem. and order at 5 (N.D. Tex. Oct. 11, 2005). This notation indicates that any problem resulting from the stress fracture was resolved as of April 2001.

[7] Plaintiff concedes that the ALJ was justified in according little weight to Dr. Parkey's October 2007 letter (Tr. at 160) and the doctor's responses to a later RFC questionnaire (Tr. at 157-59) because they were drafted at least in part with the goal of supporting Plaintiff's disability claims. (*See* Pl. Br. at 11-12.)

[8] Notably, "evidence of deterioration of a condition resulting after the period for which benefits are sought is not material" to the disability determination. *Joubert v. Astrue*, 287 F. App'x 380, 384 (5th Cir. 2008).

Consequently, even if the ALJ should have addressed Dr. Parkey's notes more thoroughly, Plaintiff's substantial rights were not affected. Procedural error does not require remand "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)).

In summary, the ALJ's RFC determination is supported by substantial evidence. Her hypothetical question posed to the VE incorporated the limitations set out in that RFC. Because the ALJ properly relied upon the VE's response to that question, she met her burden to show that Plaintiff could perform other work. *See Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001). Plaintiff has not rebutted that showing. Consequently, the ALJ did not err in finding Plaintiff not disabled between January 1, 2003, and March 31, 2004.

### III. RECOMMENDATION

The decision of the Commissioner should be **AFFIRMED**.

**SO RECOMMENDED**, **on this 10th day of May, 2010.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE